Not Reported in Cal.Rptr.3d                                                                 Page 1
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

Dunn v. County of Mendocino
Cal.App. 1 Dist.,2006.
Only the Westlaw citation is currently available.

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

Court of Appeal, First District, Division 2, California.
Michael **DUNN**, Plaintiff and Appellant,
v.
**COUNTY OF MENDOCINO**, Defendant and Respondent.
**No. A111098.**
**(Mendocino County Super. Ct. No. SCUK-CVPT-03-89762-02).**

May 11, 2006.

Michael Dunn, Laytonville, CA, pro se.
Brian Dennis Newman, DA Mendocino County, Norman Vroman, County of Mendocino, Ukiah, CA, for Defendant and Respondent.

LAMBDEN, J.

**\*1** Michael Dunn, appearing in propria persona as he has throughout the proceedings below and before this court, seeks reversal of the trial court's grant of summary judgment. County of Mendocino, one of three defendants below, opposes Dunn's request. This is Dunn's second appeal to this court from the action below.

## BACKGROUND

On March 12, 2003, Dunn filed a rambling and confusing handwritten "petition"[1] in Mendocino County Superior Court. The legal basis for Dunn's petition is unclear. The records in Dunn's two appeals to this court do not contain any complaint or summons filed or served prior to the petition. Dunn refers to the document he filed as a "petition," a "complaint," and a "motion," and repeatedly refers to himself as "movant." He fails to identify a single cause of action, or explain the legal authority for the court's jurisdiction over this matter and the named defendants, Mendocino County, District Attorney Norman L. Vroman, and Sheriff Tony Craver (collectively, defendants), upon his filing of a "petition" alone. Nonetheless, it appears that the court assigned a new case number to Dunn's petition, and scheduled a hearing on it.

Dunn's statements in his petition indicate that he is concerned with personal property belonging to him that was purportedly seized improperly by the Ukiah Police Department and "COMET" (a reference to the "County of Mendocino Marijuana Eradication Team") around the time Dunn was arrested on criminal charges in 1993, and purportedly held by the Mendocino County District Attorney in five different matters, numbered 93-0897, 93-F-043, CV66858, CV67033 and CV67034. He contends government authorities are wrongfully holding, or have wrongfully disposed of or distributed, property that was unrelated to any crime, without regard for his rights to notice and a hearing. Dunn contends there were no convictions relating to the property seized, and that he had repeatedly asked for return of property held by the sheriff's department

---

[1] Although this petition is not contained in the record of this appeal, it is contained in the record of Dunn's prior appeal. Dunn refers to the record of his previous appeal in his appellate papers, to which County of Mendocino does not object, and we construe Dunn's reference to be a request for judicial notice. We grant this request pursuant to Evidence Code section 452, subdivision (d). (See *Conlan v. Shewry* (2005) 131 Cal.App.4th 1354, 1364.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT G

Not Reported in Cal.Rptr.3d                                                                          Page 2
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

that has not returned.

Dunn seeks the return of, or unspecified equitable relief regarding, his property, although he states that "much of my property was held for civil forfeiture but was destroyed/dispersed by Jan 2000 court order...." In his petition, Dunn does not seek money damages for the personal property (although he does seek the return of certain monies that were seized, along with interest).[2] He states:

"Movant will not just accept cash for wrongfully disposed/distributed items as many can be legally owned by movant but cannot be purchased anymore and many are unique [sic] items (which the noble people of COMET most likely took home). The process of non discriminatory seizure and then disposition without a hearing is simple looting.

"Disposition without a hearing, reckless same cause of actions which must be abated, failure to notify movant of actions affecting forfeiture, violation of [Health & Safety] rules, disposition of items not related to any crime and failure to respond to repeated requests for the return of property *demands* more than simple cash compensation. A court may provide equitable relief where the laws state no penalty for malfeasance by authorities."

**\*2** In July 2003, the Mendocino County Superior Court dismissed Dunn's petition as barred under the principles of res judicata and collateral estoppel. Dunn appealed that dismissal to this court in *Dunn v. Mendocino County, et al.,* No. A105280. In a nonpublished opinion filed on December 23,

2004, we reversed the trial court's dismissal and remanded the matter for further proceedings because the court relied solely on the prior dismissal of one of the matters referred to in Dunn's petition, a forfeiture action that had been filed by the People in 1993, case No. SCUK-CVG-93-67033 (CV67033). That case, along with another forfeiture action filed by the People in 1993, case No. SCUK-CVG-93-67034 (CV67034), was dismissed on December 20, 2002, at an order to show cause re dismissal hearing. As we explained in the prior opinion, such a dismissal is not a proper basis for the application of the principles of res judicata or collateral estoppel.

On March 18, 2005, the Mendocino County District Attorney, as attorney for defendants in the present action, filed a motion for summary judgment, a memorandum in support of the motion with certain supporting documents attached to it, and a separate statement of undisputed facts.[3] The supporting documents included an "Affidavit of James Noe in re Evidence Seized From Plaintiff in 1993" (Noe affidavit) to which were attached lists of items purportedly seized from Dunn and a January 2000 declaration and court order authorizing the destruction or disposition of certain unspecified "evidence/property held by the Mendocino County Sheriff" in case No. 93-0897 (January 2000 order). Defendants' motion was not only filed in the same action as Dunn's March 2005 petition, but, as indicated on the caption pages, also was filed in the two forfeiture cases that previously had been dismissed for lack of

---

[2] Dunn specifically identifies $1,014.76, which he seeks returned with interest; "gun parts, x-videotapes, batteries, etc." included in matter 93-0897; "$1,000, generator" held in case No. CV67034, or the value of the generator and $1000 plus compounded interest; and "cobray grenade launcher, etc. (is a legal flare launcher)" held in case No. CV77033.

[3] The record submitted to this court contained only the memorandum of points and authorities and attached documents filed by the district attorney on behalf of the People. At hearing, counsel for County of Mendocino informed us that a motion and separate statement of undisputed facts had been filed in the superior court below as a part of defendants' motion for summary judgment. Subsequently, we obtained a copy of this motion and separate statement from the superior court, and refer to these documents herein.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                        Page 3
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

prosecution, case Nos. CV67033 and CV67034.

Defendants' separate statement of facts includes statements that defendants Vroman and Craver first took office in 1999. It continues:

"3. The property that is the subject of the above captioned matters was seized in connection with plaintiff's arrest and the search conducted of his property pursuant to search warrant in 1993.

"4. [Dunn] was convicted of Animal Cruelty, a Felony Violation of Penal Code section 597(a) by jury verdict on June 15, 1973. He was sentenced for this offense, as a felony, on June 22, 1973.

"5. Plaintiff's Felony conviction had not been reduced to a misdemeanor at the time of his arrest in 1993.

"6. Plaintiff abandoned his claim to defendant $1,014.76 in United States Currency. It was dismissed with prejudice on June 15, 1994, Case: 66858.

"7. All of the property that is not contraband has been returned to plaintiff.

"8. Plaintiff has not filed a claim with the county for property not returned."

Dunn's reply asserted various facts and arguments, and had certain documents attached to it. He did not submit any separate statement of disputed facts, nor did he provide an evidentiary foundation for the documents he submitted. Defendants did not file a reply memorandum, nor attend the subsequent summary judgment hearing (thereby incurring a $250 sanction).

*3 After the hearing, the court granted summary judgment in a written order issued on June 16, 2005. Pursuant to the court's order, defendants subsequently submitted an "Order Granting Motion for Summary Judgment and Judgment," which the court entered on July 15, 2005. The court stated as reasons for granting the motion that: (1) Dunn did not offer a separate statement of disputed facts; (2) Dunn had abandoned a claim for the $1,074.76 when his attorney dismissed a claim for it in 1994 in case No. 66858, which dismissal was attached to the moving memorandum; (3) Dunn was convicted of a felony in 1973; (4) as of 1998, Dunn was a convicted felon out of a federal court proceeding, having been found guilty of manufacture/cultivation of marijuana, possession of an unregistered machine gun and destructive devices, and the manufacture of destructive devices under federal law; (5) Dunn's 1973 felony conviction had not been reduced to a misdemeanor as Dunn had argued; (6) the property involved in the matters was properly seized pursuant to a search warrant in 1993; (7) all property that was not contraband was returned to Dunn; (8) Defendants Vroman and Craver did not take office until 1999, after the events complained of occurred; (9) Dunn did not file a claim against the County of Mendocino for property not returned pursuant to Government Code sections 945.4, 950.2, and 945.6; and (10) Dunn did not offer foundation for the evidentiary matters set forth in his opposition.

Dunn subsequently filed a notice of appeal "of dismissal filed June 16, 2005," which dismissal is not contained in the record. We construe Dunn's notice of appeal as appealing the court's June 14, 2005 order and judgment (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20-21 [notice of appeal should be liberally construed in favor of its sufficiency] ), and proceed accordingly.

### DISCUSSION

As we discuss below, we reverse the trial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

court's entry of summary judgment and remand to the trial court for further proceedings consistent with this opinion.

A trial court's summary judgment rulings are subject to our de novo review. (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69.) As this court has previously discussed in *Scheiding,* "[a] motion for summary judgment must be granted if all of the papers submitted show 'there is no triable issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law. In determining whether the papers show ... there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, ... and all inferences reasonably deducible from the evidence....' ( [Code Civ. Proc.,] § 437c. subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it 'has shown that one or more elements of the cause of action ... cannot be established, or that there is a complete defense to that cause of action.' " (*Id.* at p. 69.)

**\*4** As our Supreme Court has noted, "[s]ummary judgment law in this state ... continues to require a defendant moving for summary judgment to present evidence, and not simply point out, that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 (*Aguilar* ), accord, *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [burden shifts to the opposing party " ' upon a "showing" that one or more elements of the cause of action cannot be established' "].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* at p. 850, fn. omitted.) Thus, "the party moving for summary judgment bears an initial burden of production to make a prima facie

showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

In other words, a party moving for summary judgment must produce sufficient evidence to establish a prima facie case, *regardless of what the opposition produces.* Such evidence must be referred to in a separate statement of undisputed facts. (Code Civ. Proc., § 437c, subd. (b)(1) ["supporting papers shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed"].) Courts have repeatedly asserted as a "golden rule" that " 'if it is not set forth in the separate statement, *it does not exist.* Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement.*' " (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337.)[4]

Accordingly, in the present case we must determine if, as the County of Mendocino argues on appeal, defendants, the moving parties below, met their initial burden of producing evidence sufficient to make a prima facie showing of the nonexistence of any triable issue of material fact. We conclude that they did not, regardless of

---

[4] At least one court has held that in factually simple cases, Code of Civil Procedure section 437c, subdivision (b)(1) gives the trial court discretion to consider evidence of facts submitted by the moving party which were not referenced in the moving party's separate statement of undisputed facts. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316.) However, that court also recognized the primary importance of a separate statement, and concluded that the trial court's consideration of evidence outside of the separate statement in that case was improper. (*Ibid.*)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

Page 6

action below. This argument also does not withstand scrutiny.

**\*6** First, the trial court's ruling found only that "[p]laintiff did not file a proper claim against *the County of Mendocino* for property not returned[.]" (Italics added.) Thus, on its own terms the ruling does not support granting summary judgment in favor of either Vroman or Craver, and neither of them has appealed this ruling.

Second, such pre-suit claims are only required when a party seeks "money or damages." (Gov.Code, § 945.4; *Snipes v. City of Bakersfield* (1983) 145 Cal.App.3d 861 [action primarily seeking injunctive relief not subject to demurrer for failure to comply with the claim filing procedure required by Gov.Code, § 945.4].) Dunn's petition primarily seeks an unspecified equitable remedy for the personal property he claims was improperly seized.[5] His pursuit of such a remedy seems futile with respect to the vast majority of property seized from Dunn, which already has been destroyed (or was cash seized) according to the documents attached to the Noe affidavit. We are unaware of any relief other than money or damages that Dunn could obtain if he ultimately prevailed on any claims about this destroyed property. Although nothing in the record indicates that Dunn had notice of the disposition of his property until February 2003, rather than October 2002 as defendants claim,[6] defendants' claim

argument with respect to these destroyed items has merit because more than two years have passed since he received notice, and because Dunn did not dispute that he did not file a claim.[7]

Nonetheless, defendants' submissions indicate that some of the items seized from Dunn have not been destroyed. Dunn, if he were to prevail in his case, might be entitled to some sort of equitable relief regarding those items, as we discuss further in section III, *post*. Defendants concede in their papers that although five video cameras were returned to Dunn in October 2000, three other cameras are "unaccounted for," and that four plastic model helicopters remain in the possession of authorities.[8] Furthermore, according to the Noe affidavit, eight firearms (a machine gun, four assault rifles and two semi-automatic assault rifles) are in the custody of the sheriff and have been placed into official use, and the sheriff has retained 19 different items constituting ammunition. Defendants cannot be required to return firearms to Dunn as discussed further in section III, *post*. Nonetheless, it cannot be said that the Government Codes discussed herein bar his claim for equitable relief regarding the firearms still in the sheriff's department's possession. Therefore, the County of Mendocino is not entitled to

---

[5] We note that appellant in his opening brief to this court states that the defendants "are responcible [*sic*] for returning, replacing, substituting [*sic*] or *new cash value tax* to satisfaction of [appellant]," suggesting he intends to pursue a damages claim for his lost property. However, we must evaluate the summary judgment motion based upon what appellant seeks in his petition, not in his briefs. (See, e.g., *Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1223 ["in ruling on a summary judgment motion, the issues which are material are limited to the allegations of the complaint"].)

[6] Defendants relied on the Noe affidavit for their October 2000 contention, but nothing contained

therein indicates that Dunn was told about the disposition of his property at that time, although a document indicates that certain items were released to him at that time. However, Dunn stated in his petition that he became aware of the January 2000 order in February 2003. Even if that was the case, it would mean that more than two years have passed since he received notice.

[7] Dunn suggests that he may be entitled to equitable relief for destroyed items based on *Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, but that case does not apply here because it involved the disposal of a vehicle at auction, not its destruction.

[8] At hearing before this court, counsel for County of Mendocino stated that Dunn did not want return of the helicopters, but this is not stated anywhere in the written record or papers submitted to this court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

action below. This argument also does not withstand scrutiny.

**\*6** First, the trial court's ruling found only that "[p]laintiff did not file a proper claim against *the County of Mendocino* for property not returned[.]" (Italics added.) Thus, on its own terms the ruling does not support granting summary judgment in favor of either Vroman or Craver, and neither of them has appealed this ruling.

Second, such pre-suit claims are only required when a party seeks "money or damages." (Gov.Code, § 945.4; *Snipes v. City of Bakersfield* (1983) 145 Cal.App.3d 861 [action primarily seeking injunctive relief not subject to demurrer for failure to comply with the claim filing procedure required by Gov.Code, § 945.4].) Dunn's petition primarily seeks an unspecified equitable remedy for the personal property he claims was improperly seized.[5] His pursuit of such a remedy seems futile with respect to the vast majority of property seized from Dunn, which already has been destroyed (or was cash seized) according to the documents attached to the Noe affidavit. We are unaware of any relief other than money or damages that Dunn could obtain if he ultimately prevailed on any claims about this destroyed property. Although nothing in the record indicates that Dunn had notice of the disposition of his property until February 2003, rather than October 2002 as defendants claim,[6] defendants' claim

argument with respect to these destroyed items has merit because more than two years have passed since he received notice, and because Dunn did not dispute that he did not file a claim.[7]

Nonetheless, defendants' submissions indicate that some of the items seized from Dunn have not been destroyed. Dunn, if he were to prevail in his case, might be entitled to some sort of equitable relief regarding those items, as we discuss further in section III, *post*. Defendants concede in their papers that although five video cameras were returned to Dunn in October 2000, three other cameras are "unaccounted for," and that four plastic model helicopters remain in the possession of authorities.[8] Furthermore, according to the Noe affidavit, eight firearms (a machine gun, four assault rifles and two semi-automatic assault rifles) are in the custody of the sheriff and have been placed into official use, and the sheriff has retained 19 different items constituting ammunition. Defendants cannot be required to return firearms to Dunn as discussed further in section III, *post*. Nonetheless, it cannot be said that the Government Codes discussed herein bar his claim for equitable relief regarding the firearms still in the sheriff's department's possession. Therefore, the County of Mendocino is not entitled to

---

[5] We note that appellant in his opening brief to this court states that the defendants "are responcible [*sic*] for returning, replacing, substituting [*sic*] or *new cash value tax* to satisfaction of [appellant]," suggesting he intends to pursue a damages claim for his lost property. However, we must evaluate the summary judgment motion based upon what appellant seeks in his petition, not in his briefs. (See, e.g., *Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1223 ["in ruling on a summary judgment motion, the issues which are material are limited to the allegations of the complaint"].)

[6] Defendants relied on the Noe affidavit for their October 2000 contention, but nothing contained

therein indicates that Dunn was told about the disposition of his property at that time, although a document indicates that certain items were released to him at that time. However, Dunn stated in his petition that he became aware of the January 2000 order in February 2003. Even if that was the case, it would mean that more than two years have passed since he received notice.

[7] Dunn suggests that he may be entitled to equitable relief for destroyed items based on *Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, but that case does not apply here because it involved the disposal of a vehicle at auction, not its destruction.

[8] At hearing before this court, counsel for County of Mendocino stated that Dunn did not want return of the helicopters, but this is not stated anywhere in the written record or papers submitted to this court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

summary judgment based on Dunn's failure to file such a claim.[9]

### III. Defendants' Initial Burden Regarding Dunn's Possession of Firearms as a Convicted Felon

Defendants next argued, and the trial court agreed, that they are entitled to summary judgment because "[a]ll of the property that is not contraband has been returned to plaintiff." Defendants relied on California's firearm disability statutes for this "contraband" theory, which prohibit convicted felons from possessing firearms. However, defendants did not establish that these statutes have been properly invoked with regard to Dunn. As Dunn suggests in his opening brief to this court, albeit for a reason not further discussed here,[10] he might have the right "to determine disposition of [his] guns under [Penal Code section] 12028," even if he does not have the right to possession, custody, or control of any firearms. Defendants ignored this matter altogether in their motion. Accordingly, defendants are not entitled to summary judgment based on these firearm disability statutes.

*7 Penal Code section 12021[11] prohibits

---

felons from having anything to do with firearms.[12] Subdivision (a)(1) of that section states in relevant part:

"Any person who has been convicted of a felony under the laws of the United States, of the State of California ... who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."[13]

Following a judgment convicting a defendant of violating section 12021, the statutes indicate that defendant shall be given an opportunity to dispose of the subject firearms. Subdivision (d)(2) of that section added in 2001 (§ 12021, as amended by Stats.2001, ch. 944, § 3 & Stats.2003, ch. 495, § 3), states in relevant part as subsequently amended:

"For any person who is subject to subdivision (a) ..., the court shall, at the time judgment is imposed, provide on a form supplied by the Department of Justice, a notice to the defendant prohibited by this section from owning, purchasing, receiving, possessing or having under his or her custody or control, any firearm. The notice shall inform the defendant of the prohibition regarding firearms and include a form to facilitate the transfer of firearms."

Section 12028, subdivision (b)(1) provides, among other things, that a firearm owned or possessed in violation of section 12021 is, "*upon a conviction* of the defendant ..., a

---

[9] Defendants only sought summary judgment below, not summary adjudication. Therefore, they are not entitled to the dismissal of parts of appellant's petition (*Jimenez v. Protective Life Ins. Co.* (1992) 8 Cal.App.4th 528, 534-535), such as his claims regarding the destroyed property, regardless of the merits of their argument. Similarly, although the record indicates that Dunn dismissed his $1,014 money claim in 1994, as the trial court found, defendants are not entitled to summary adjudication on this portion of Dunn's petition because they did not move for such a disposition.

[10] Dunn makes his reference to Penal Code section 12028 in arguing that the Ninth Circuit Court of Appeals purportedly found that his federal felony conviction did not involve the use of guns, an argument for which he did not provide competent evidence.

[11] Further statutory references are to the Penal Code unless otherwise indicated.

[12] A "firearm" is defined as "any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion." (§ 12001, subd. (b.).)

[13] A person violating section 12021 cannot "own, possess, or have under his or her custody or control, any ammunition or reloaded ammunition." (§ 12316, subd. (b)(1).) However, we do not further address the ammunitions retained by the sheriff's department because summary judgment must be denied in light of the firearms retained by the department, as discussed herein.

---

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                   Page 8
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

nuisance." (Italics added; see, e.g., *People v. Lamonte* (1997) 53 Cal.App.4th 544, 552, fn. 12 ["*Following a conviction* for being a felon in possession of a firearm, the weapon is declared a nuisance and surrendered to law enforcement." (Italics added.) ].) Notably, as amended in 2003, section 12028 states that "[a] firearm is not a nuisance pursuant to this subdivision if the firearm owner disposes of his or her firearm pursuant to paragraph (2) of subdivision (d) of Section 12021." (*Id.*, subd. (b)(2), as amended by Stats.2003, ch. 499, § 5.)

A firearm that is a nuisance shall be surrendered to the appropriate law enforcement agency, such as the sheriff of a county, which may sell the firearm at auction or destroy it as appropriate. (§ 12028, subds.(c) & (d).)[14] Section 12030 provides for alternatives to the destruction of firearms, including a law enforcement agency's use of such firearms in its custody. (§ 12030, subd. (b).)[15]

Furthermore, although neither party raises the issue, while this lawsuit was pending, the Legislature added section 12021.3 in 2004 (Stats.2004, ch. 602, § 1), which provides that "[a]ny person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned to him or her shall make application for a determination by the Department of Justice as to whether he or she is eligible to possess a firearm." This section outlines a procedure for doing so. Section 12021.3 also provides that, in the event that "the department denies

the application, and the firearm is an otherwise legal firearm, the department shall notify the applicant of the denial and provide a form for the applicant to use to sell or transfer the firearm to a licensed dealer as defined in Section 12071," and that "[i]f a law enforcement agency determines that the applicant is the legal owner of any firearm deposited with the law enforcement agency and is prohibited from possessing any firearm and the firearm is an otherwise legal firearm, the applicant shall be entitled to sell or transfer the firearm to a licensed dealer as defined in Section 12071." (§ 12021.3, subds.(f) & (i)(1).)

**\*8** Reading these statutes together, California law provides that (1) it is a felony for a convicted felon to have possession, custody or control of any firearm, pursuant to section 12021; (2) at the time judgment is imposed for violating section 12021, a form shall be provided to the defendant to facilitate transfer of such firearms; (3) pursuant to section 12028, a firearm disposed of by the defendant pursuant to such a procedure is not a nuisance; (4) a firearm that is found to be a nuisance shall be surrendered to the appropriate law enforcement agency and sold, destroyed or retained by the agency for its own use; (5) in no event shall a law enforcement agency in possession or custody of a firearm to which anyone claims title return such a firearm without that person's application to, and approval by, the Department of Justice; and (6) in the event of the Department of Justice's denial of such an application because the person is prohibited from possessing such a firearm, a legal owner of a legal firearm shall be entitled to sell or transfer the firearm to a licensed dealer as defined in section 12071.

Defendants asserted to the trial court that Dunn was a convicted felon prior to 1993 when his property was seized. Although Dunn challenges whether this is correct, he did not submit a separate statement

---

[14] Certain weapons constitute nuisances pursuant to section 12029, but defendants do not assert that any of Dunn's weapons are subject to this provision.

[15] We do not address other statutory provisions that may or may not be applicable to the present action. For example, the possession of assault weapons is specifically addressed elsewhere in the Penal Code, such as in section 12280, but the facts asserted below are insufficient to review the propriety of either party's actions under such provisions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

disputing this fact, nor did he submit any of the documents that he relies on in proper form. Accordingly, defendants have met their initial burden of making a prima facie showing that Dunn was a convicted felon at the time his property was seized, which Dunn did not effectively dispute.[16]

Nonetheless, defendants did not make a prima facie showing that Dunn's claims must be denied in their entirety with regard to these firearms. On the one hand, although section 12021.3 was enacted after Dunn's initiation of this action, we see no reason why its provisions should not apply to these circumstances. Thus, the sheriff's department certainly cannot return any firearms to Dunn prior to his proper application for their return, and the approval of that application as mandated by section section 12021.3. On the other hand, for purposes of reviewing the grant of summary judgment, we must determine whether defendants made a prima facie showing that Dunn has failed to comply with section 12021.3's provisions, or that any application by him has been rejected. While defendants stated as a separate statement of undisputed fact that Dunn "has not filed a claim with the *county* for property not returned" (italics added), they were silent as to any applications Dunn has or has not made to the sheriff's department for return of any firearms retained by it. Therefore, defendants failed to make a prima facie showing regarding this issue and the action

cannot be dismissed on this basis.[17]

Moreover, as we have discussed *ante,* sections 12021, 12021.3 and 12028 each contain language indicating that, if Dunn is not entitled to the return of the contested firearms, he might be entitled to arrange their transfer under the proper circumstances. Defendants do not make a prima facie showing that Dunn is not entitled to arrange such a transfer, nor do they establish that the court cannot use its equitable powers to provide him with such relief. They also are not entitled to summary judgment in light of these failures.

**\*9** Specifically, other than the fact that Dunn is a convicted felon, defendants asserted only that "[a]ll of the property that is not contraband has been returned to plaintiff." Their sole support for this statement is the Noe affidavit. However, the Noe affidavit does not establish how it was determined that Dunn's unreturned property was "contraband." For example, defendants do not state as an undisputed fact that Dunn has been convicted of a violation of section 12021, nor that he has had the opportunity to dispose of his firearms pursuant to

---

[16] Dunn argues that his federal conviction, on drug and weapons charges, including the possession of an unregistered machine gun, should not be a basis for dismissal here because the Ninth Circuit Court of Appeals purportedly found guns were not used or carried by him; the State of California cannot recognize a federal felony conviction; and state law was supposedly violated with regard to his initial arrest. We are not persuaded by his cursory arguments, but we need not address them further in reviewing the trial court's grant of summary judgment, given the prima facie showing that he had a previous felony conviction in a California state court and Dunn's failure to effectively rebut this showing.

[17] Aside from the requirements of section 12021.3, we question, without determining, whether the return of firearms held by a law enforcement agency to a person found by a court in a civil proceeding to be a convicted felon can be allowed in light of the section 12021 prohibition, even if the person has not been tried and found guilty of violating that statute in a criminal proceeding. Although it does not appear that Dunn has been convicted of a violation of section 12021, we are to "apply common sense to the language at hand and interpret the statute to make it workable and reasonable. [Citation.] Accordingly, the statute should be interpreted to avoid an absurd result." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122.) If the court were to find that Dunn is a convicted felon, return of any firearms to him would in fact lead to an absurd result. That is, immediately upon return of these firearms to him, authorities would have good cause to seize the firearms once again, and arrest and charge Dunn with a commission of a felony, to wit, a violation of section 12021.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                    Page 10
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

subdivision (d)(2) of that section, nor, as already mentioned, that any application has been rejected pursuant to section 12021.3, nor when and how any of his firearms or ammunition have been properly determined to be a nuisance pursuant to section 12028.

One document attached to the Noe affidavit, the January 2000 order, authorized the Mendocino County Sheriff to destroy or dispose of certain property pursuant to, among other statutory provisions, sections 12028 and 12030.[18] This order precedes the implementation of the provisions in section 12021, subdivision (d)(2), section 12021.3, and section 12028, subdivision (b)(2), discussed herein, which provide for a person's transfer of prohibited firearms under certain circumstances. Nonetheless, this order is not dispositive for two reasons. First, it allowed the sheriff's department to destroy or dispose of certain unspecified items in accordance with sections 12028, 12029, 12030 and 12032, but did not itself establish that the department had in fact a legal basis for doing so. The court acted in response to a form declaration submitted by a representative of the sheriff's department which merely referred to "attached listed property," and had a box checked next to a reference to firearms and ammunition "declared to be a nuisance pursuant to the provisions of sections 12028, 12029, 12030, 12032." However, nothing in this order, the declaration upon which it relied, or anything else defendants submitted below establishes that any of Dunn's claimed firearms were properly declared a nuisance, or that Dunn was found guilty of violating section 12021, despite the fact that section 12028, as stated in 2000,[19] required such a conviction before

firearms could be declared a nuisance based on a person's prior felony conviction.

Second, the order is not dispositive because it does not identify the firearms or ammunition that are subject to it, but instead refers to weapons and ammunition on certain attached lists which Noe did not attach to his affidavit. The only lists he attached to his affidavit are identified by him in May 2003 as prepared at his direction. In short, defendants failed to provide evidence sufficient to establish what firearms and ammunition are actually covered by the January 2000 order.

Regardless, defendants did not rely directly on this January 2000 order. Instead, defendants made a number of arguments to the trial court that cannot be maintained. They stated as follows:

**\*10** "Plaintiff's prosecution took place in federal court and for that reason could not include a violation of [section 12021]. However by his claim on the firearms he is asserting his ownership of them. That fact coupled with his status as a convicted felon at the time of his ownership is sufficient for this court to find he possessed them in violation of [section 12021] and that they are therefore a nuisance."

In other words, defendants asked the trial court to bypass section 12028's requirement that Dunn be convicted of a violation of section 12021 and given an opportunity, if appropriate, to transfer the subject firearms before such firearms can be declared a nuisance. Defendants did not provide any legal support for this argument. Although we question whether a court in a civil proceeding can order the return of firearms to a person that the court finds to be a convicted felon (see fn. 15, *ante* ), we nonetheless must reject defendants argument

---

[18] County of Mendocino does not argue the relevance of the other laws referred to in the January 2000 order.

[19] Section 12028, subdivision (b) was redesignated as section 12028, subdivision (b)(1) and a nonmaterial change made to its content in 2003 (Stats.2003, ch. 499, § 5), which provision we have already referred to herein.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                      Page 11
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
(Cite as: Not Reported in Cal.Rptr.3d)

in light of section 12028's express terms.[20]

Defendants further argued to the trial court that Dunn's "firearms are also a nuisance because they were used in the commission of the crime he was convicted of in federal court." We must reject this as well because defendants did not state any facts, or provide evidence, which constituted a prima facie showing that this is true.

Next, defendants argued to the trial court that Dunn should not be permitted to dispose of firearms that are not in and of themselves "contraband." They contended section 12021, subdivision (d)(2), which indicates he should have an opportunity to dispose of the weapons, does not apply here because Dunn was already a convicted felon when the firearms were seized. Defendants did not provide any legal authority for this argument, which is not supported by the text of the subdivision. Therefore, we reject it as a basis for summary judgment here.

Finally, the County of Mendocino states in its brief to this court that "[t]he asset forfeiture actions were disposed of in that plaintiff abandoned his claim to the cash and the other property that was either returned to him or disposed of as contraband." Putting the issue of the cash aside (see fn. 10, *ante* ), the county does not cite to anything in the record showing that Dunn "abandoned" any claim to property that was the subject of either of the People's forfeiture actions, and we do not find such evidence in our own review of it.[21] To the contrary, Dunn argues

at some length that his property should not have been destroyed or disposed of while the asset forfeiture actions were pending, an argument we need not address further in light of our ruling here.

In short, we conclude that defendants have failed to meet their initial burden of making a prima facie showing that Dunn has no right to equitable relief with regard to the firearms that the sheriff's department has retained, such as relief affording Dunn with the opportunity to arrange transfer pursuant to sections 12021.3, 12028, subdivision (d)(2) and section 12021, subdivision (b)(2). Therefore, defendants are not entitled to summary judgment.

**11 We sympathize with the difficulties that defendants faced in determining what Dunn seeks in his petition, which is so confusing that it appears susceptible to a demurrer or motion for judgment on the pleadings in its present form. We further note that, to avoid the unjust reward of ignorance, a pro per "litigant is restricted to the same rules of procedure as is required of those qualified to practice before our courts." (*Harding v. Collazo* (1986) 177 Cal .App.3d 1044, 1055.) However, defendants, having chosen not to challenge the sufficiency of these pleadings, but to move for summary judgment instead, must meet the minimal burdens placed upon them for such a motion to be granted. They have failed to do so.

## DISPOSITION

The trial court judgment is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion. Dunn is awarded costs.

---

[20] Furthermore, the County of Mendocino does not provide any facts or legal authority for an argument that it may be hinting at here, namely that the federal weapons conviction against Dunn should somehow be construed as a conviction of a violation of section 12021.

[21] In any event, we see no basis for the court granting defendants' motion for summary judgment with respect to the two forfeiture actions, case Nos. CV67033 and CV67034. In addition to the reasons stated herein, the superior court previously dismissed

these actions for lack of prosecution, and nothing in the record indicates these actions were revived prior to defendants' filing of their motion for summary judgment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                    Page 12
Not Reported in Cal.Rptr.3d, 2006 WL 1303943 (Cal.App. 1 Dist., 2006)
**(Cite as: Not Reported in Cal.Rptr.3d)**

We concur: KLINE, P.J., and BUSCH, J.[*]

Cal.App. 1 Dist., 2006.
Dunn v. County of Mendocino

END OF DOCUMENT

---

[*] Judge of the San Francisco Superior Court assigned
by the Chief Justice pursuant to article VI, section 6
of the California Constitution.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.